UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KEYS HOSPITALITY, LLC, a Kansas Limited Liability Company; BRUCE L. ARMSTRONG, an individual; and BRIAN G. SMITH, an individual,<br><br>Defendants. | Civil Action No. 18-3993 (JXN)(JSA) |
| RAMADA WORLDWIDE INC., a Delaware Corporation,<br><br>**Plaintiff,**<br><br>v.<br><br>**KEYS OF TOPEKA HOSPITALITY, LLC, a Kansas Limited Liability Company; BRUCE L. ARMSTRONG, an individual; and BRIAN G. SMITH, an individual,**<br><br>**Defendants.** | *Consolidated with*<br><br>Civil Action No. 19-14575 (JXN)(JSA)<br><br>**OPINION** |

**NEALS**, District Judge

This Matter comes before the Court upon Plaintiff Ramada Worldwide Inc.'s ("Plaintiff" or "RWI") motion for summary judgment against Defendant Bruce L. Armstrong ("Defendant" or "Armstrong") only,[1] in the matter *Ramada Worldwide Inc. v. Keys of Topeka Hospitality, LLC, et*

---

[1] The Sixth Count of RWI's Complaint alleges breach of a personal guaranty against Armstrong and Brian G. Smith ("Smith"). (*See* Complaint ("Compl.") ¶¶ 46-49, ECF No. 1.) However, Armstrong is the only active defendant in this

*al.*, Civil Action No. 19-14575, pursuant to Federal Rule of Civil Procedure 56. (ECF No. 89.) Armstrong opposed the motion (ECF No. 91), and Plaintiff replied in further support (ECF No. 95). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED.**

## I.   BACKGROUND[2]

RWI is a Delaware corporation with its principal place of business in New Jersey. (PSOMF ¶ 1, ECF No. 89-3.) Keys of Topeka Hospitality, LLC ("Keys of Topeka") is a limited liability company organized under the laws of the State of Kansas and maintains its principal place of business in the State of Utah. (PSOMF ¶ 2.) The members of Keys of Topeka are defendants Armstrong, an individual and citizen of the State of Utah, and Brian G. Smith ("Smith"), also an individual and citizen of the State of Kansas. (PSOMF ¶¶ 3–4.)

This suit arises from a franchise agreement between RWI and Keys of Topeka on December 13, 2013 (the "Franchise Agreement"), which required Keys of Topeka to operate a 197-room[3] Ramada® guest-lodging facility located at 605 SW Fairlawn Road, Topeka, Kansas 66606, designated as Site No. 47044-04281-02 (the "Facility") for a term of fifteen years. (PSOMF

---

lawsuit as Defendant Smith was dismissed without prejudice from this matter on August 29, 2019, following his Chapter 7 bankruptcy discharge. (ECF No. 34.)

[2] The facts derive from Plaintiff's Statement of Undisputed Material Facts ("PSMF") (ECF No. 89-3), Defendant's Response to Plaintiff's Statement of Facts ("DRSMF") and Counter Statement of Facts ("DCSF") (ECF No. 95-5), and Plaintiff's Response to Defendant's Counter Statement of Facts ("PRCSF") (ECF No 95-1), along with the supporting documents to this pending motion. For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

[3] By Amendment to the Franchise Agreement dated September 25, 2015, the parties modified the Franchise Agreement to reflect that the number of guest rooms at the Facility had decreased from 197 rooms to 150 rooms. (PSMF ¶ 11; Mallet Aff., ¶ 9, n.1, Ex. B.)

¶¶ 7, 11; Affidavit of Kendra Mallet ("Mallet Aff."), Ex. A, Franchise Agreement, ECF No. 89-5.) Armstrong signed the Franchise Agreement on behalf of Keys of Topeka. (PSOMF ¶ 8; Franchise Agreement at 26.) On the same day, Armstrong, among others, provided RWI with a guaranty of Keys of Topeka's obligations under the Franchise Agreement ("Guaranty"). (PSOMF ¶¶ 22-23; Mallet Aff., ¶ 21, Ex. C ("Guaranty"), ECF No. 89-5.) Pursuant to the terms of the Guaranty, Armstrong agreed, among other things, that upon a default under the Franchise Agreement, he would "immediately make each payment and perform or cause [Keys of Topeka] to perform, each unpaid or unperformed obligation of [Keys of Topeka] under the Agreement." (PSOMF ¶ 24; Guaranty.) The Guaranty also committed Armstrong and Smith to pay costs, including reasonable attorney's fees, that RWI might incur in enforcing the Guaranty or Franchise Agreement. (PSOMF ¶ 25.)

Under the terms of the Franchise Agreement, Keys of Topeka was required to make periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").[4] (PSOMF ¶ 12; Franchise Agreement §7 and Schedule C.) In the event of an early termination of the Franchise Agreement by Keys of Topeka, Keys of Topeka was required to pay liquidated damages to RWI in accordance with a formula specified in the Franchise Agreement. (PSOMF ¶ 19; Franchise Agreement § 12.1.) In the event of litigation to enforce the terms of the Franchise Agreement or collect amounts owed under

---

[4] Section 7 of the Franchise Agreement defines Recurring Fees as consisting of a monthly Royalty fee equal to "four and one-half percent (4.5%) of Gross Room Revenues of the Facility accruing during the calendar month, (Franchise Agreement § 7.1.1); a monthly System Assessment Fee equal to four percent (4.0%) "of Gross Room Revenues" of the Facility, consisting of a "Marketing Contribution" of "2.0% of Gross Room Revenues" and "Basic Reservation Fee" of "2.0% of Gross Room Revenues" (Franchise Agreement §7.1.2 and Schedule C); and interest "on any past due amount payable to [RWI] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Franchise Agreement §7.3.)

3

it, the non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees incurred by the prevailing party. (PSMF ¶¶ 21, 24; Franchise Agreement §17.4; Guaranty.) The Franchise Agreement also included a New Jersey choice of law provision. (*See* Franchise Agreement §17.6.3.)

On November 13, 2017, Keys of Topeka "unilaterally terminated" the Franchise Agreement by ceasing to operate the Facility as a Ramada® guest-lodging facility effective November 13, 2017. (PSMF ¶ 26.) By letter dated December 29, 2017, RWI acknowledged Keys of Topeka's termination of the Franchise Agreement, effective November 13, 2017, and advised Keys of Topeka that it was required to pay RWI liquidated damages for the premature termination the sum of $300,000.00 and all outstanding Recurring Fees and other charges under the Franchise Agreement. (PSOMF ¶ 27; Mallet Aff. ¶ 24, Ex. D.) Armstrong owes recurring fees to RWI of $145,432.48 inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to section 7.3 of the Franchise Agreement) as of December 16, 2021. (PSMF ¶ 29; Mallet Aff. ¶¶ 27-28, Ex. E.) Despite due demand, Armstrong has not paid the outstanding Recurring Fees or the liquidated damages under the Franchise Agreement. (PSOMF ¶ 28; Mallet Aff. ¶ 26; Certification of Bryan P. Couch ("Couch Cert.") ¶ 3, Ex. A, No.12; Couch Cert. ¶ 4, Ex. B, Nos. 7-9; Couch Cert., ¶ 5, Ex. C, at T68:16-T69:18, ECF No. 89-7.)

On March 22, 2018, RWI filed a Complaint against defendants Keys Hospitality, LLC, Armstrong, and Smith, seeking damages for breach of the Franchise Agreement and personal guaranty (the "First Lawsuit"). (*See Ramada Worldwide Inc. v. Keys Hospitality, LLC, et al.*, Civil

Action No. 18-cv-03993, ECF No. 1.)[5] Armstrong filed his Answer and Counterclaim on June 29, 2018.[6]

On July 1, 2019, RWI filed a Complaint against Defendants Keys of Topeka, Armstrong, and Brian G. Smith, seeking damages for breach of a franchise agreement and personal guaranty (the "Second Lawsuit").[7] (*See generally* Compl.) By Order dated September 9, 2019, the Court consolidated the First Lawsuit and the Second Lawsuit for all purposes. (ECF No. 35.)

Discovery closed on January 31, 2020. (*See* ECF No. 37.) On August 19, 2021, the undersigned granted RWI's request to file two separate summary judgment motions, one as to the First Lawsuit and one as to the Second Lawsuit. (*See* ECF No. 73.)

On December 17, 2021, RWI filed its summary judgment motion with respect to the Second Lawsuit, *Ramada Worldwide Inc. v. Keys of Topeka Hospitality, LLC, et al.*, Civil Action No. 19-cv-14575. (*See* ECF No. 76.) By Order dated August 21, 2023, RWI's summary judgment motion was administratively terminated, and the parties were directed to attend mediation pursuant to L. Civ. R. 301.1. (*See* ECF No. 84.) The parties attended mediation on November 29, 2023, but were unable to resolve this matter. (*See* ECF No. 87.) As a result, on December 18, 2023, RWI was directed to re-file its motion for summary judgment. (*See* ECF No. 88.)

On January 2, 2024, RWI moved for summary judgment against Armstrong in his capacity as guarantor for failing to pay the Recurring Fees and liquidated damages for premature

---

[5] Default was entered in the First Lawsuit against defendants Keys Hospitality and Smith on June 12, 2018. By Order dated August 20, 2018, RWI was directed to move for default judgment against defendants, Keys Hospitality, LLC, and Brian G. Smith, after resolution of the pending claims against Armstrong in the First Lawsuit. (ECF No. 15.) Defendant Smith was subsequently dismissed without prejudice from the First Lawsuit on August 29, 2019, after he filed for bankruptcy. (ECF No. 34.)

[6] Armstrong's pleading is titled "Answer and Counterclaim," but contains no Counterclaim. (*See* ECF No. 12).

[7] Default was entered in the Second Lawsuit against defendants Keys of Topeka and Smith on August 15, 2019. Defendant Smith was also dismissed without prejudice from the Second Lawsuit on August 29, 2019, following filing for bankruptcy.

termination on behalf of Keys of Topeka. (*See* ECF No. 89.) Armstrong opposed the motion (ECF No. 91), and RWI replied in further support (ECF No. 95). This motion is now fully briefed and ripe for the Court to decide.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The Court also will not "resolve factual disputes or make credibility determinations." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)). Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact

exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

### III.     DISCUSSION

#### A. RWI Is Entitled to Summary Judgment on its Breach of Guaranty Claim Against Armstrong (Sixth Count)

RWI alleges that Armstrong breached the Guaranty by failing to pay the damages owed to RWI due to Keys of Topeka's premature termination of the Franchise Agreement. (ECF No. 89-4 at 5-9.) Pursuant to the choice of law provision set forth in Section 17.6.1 of the Franchise Agreement, which the Guaranty incorporates by reference, New Jersey law governs RWI's breach of guaranty claim. (*See* Franchise Agreement §17.6.1; Guaranty (incorporating by reference Section 17 of the Franchise Agreement).) To prove a claim for breach of a personal guaranty, the plaintiff must show (1) the execution of the guaranty by the guarantor; (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by the principal obligor, (5) written demand for payment on the guaranty; and (6) failure of the guarantor to pay upon written demand. *Ramada Worldwide Inc. v. Jafri*, No. 12-CV-5301 KM, 2015 WL 404399, at *3 (D.N.J. Jan. 29, 2015) (citing *U.S. on Behalf of Small Bus. Admin., v. DelGuercio,* 818 F.Supp. 725, 728 (D.N.J.1993)). RWI argues that each of these elements has been conclusively established here. The Court agrees.

As to the first prong, Armstrong admits he signed the Guaranty. (*See* Guaranty; Couch Cert. ¶ 4, Ex. B, at No. 5; Couch Cert. ¶ 5, Ex. C, at T55:8-20.) As to the second prong, the terms of the Guaranty are unambiguous and clearly set forth Armstrong's obligation to "immediately

7

make each payment and perform or cause [Keys of Topeka] to perform, each unpaid or unperformed obligation of [Keys of Topeka] under the [Franchise] Agreement." (*See* Guaranty.) As to the third prong, RWI's reliance upon the Guaranty is evidenced by its express language, which states that the purpose of the Guaranty is "[t]o induce Ramada Worldwide, Inc. ....to sign the Franchise Agreement." (*See id*.) As to the fourth prong, it is undisputed that Keys of Topeka defaulted under the terms of the Franchise Agreement. (Mallet Aff. ¶¶ 28-29.) This unilateral termination constituted a breach of the Franchise Agreement pursuant to Section 11.2 of the Agreement. (*See* Mallet Aff., Ex. D; Franchise Agreement §11.2.) On November 13, 2017, Keys of Topeka unilaterally terminated the Franchise Agreement by ceasing to operate the Facility as a Ramada® guest lodging facility. (*See* Mallet Aff. ¶ 24, Ex. D; Franchise Agreement §§ 3.2, 11.2.) As to the fifth prong, RWI made a written demand for payment on the Guaranty. By letter dated December 29, 2017, RWI acknowledged Keys of Topeka's unilateral termination of the Franchise Agreement and informed Keys of Topeka that it was required to pay RWI liquidated damages for the premature termination of the Agreement as well as all outstanding Recurring Fees through the date of termination. (Mallet Aff. ¶ 27, Ex. D.) Finally, the sixth prong is met because Armstrong has failed to pay the amounts owed despite RWI's written demand for payment. (Mallet Aff. ¶ 26; Couch Cert. ¶ 3, Ex. A No. 12; Couch Cert. ¶ 4, Ex. B, Nos. 7-9; Couch Cert. ¶ 5, Ex. C at T68:16-T69:18.) Armstrong does not dispute the validity of the Guaranty; instead, he contends that RWI breached the Franchise Agreement first. (ECF No. 91-4 at 4.) Specifically, Armstrong contends that "[t]here is no evidence that prior to the notice received by [RWI] in November 2017, that [RWI] had engaged in the promotion or advertising for the benefit of Keys of Topeka, LLC, as it was required to do under the Franchise Agreement." (ECF No. 91-4 at 3, 7.) The Court addresses Armstrong's argument below.

**1. RWI's Alleged Breach**

The sole argument raised by Armstrong in his opposition is that Keys of Topeka was "justified in its termination of the [Franchise] Agreement and summary judgment is inappropriate at this time" because RWI breached the Franchise Agreement first by failing to promote and market the hotel facility. (See ECF No. 91-4 at 3-6.) Armstrong further contends that this breach precludes RWI from seeking damages in this case.

"New Jersey courts recognize that a material breach by either party to a bilateral contract excuses the other party from rendering any further performance." *Ramada Worldwide Inc. v. Highend Hotel Grp. of Am., LLC*, No. CV 20-14020 (JXN) (JRA), 2024 WL 4903559, at *3 (D.N.J. Nov. 26, 2024) (quoting *Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, No. CIV. 03-799 (WHW), 2005 WL 2656676, at *5 (D.N.J. Oct. 18, 2005); *see Nolan ex rel. Nolan v. Lee Ho.*, 577 A.2d 143, 146 (N.J. 1990) ("[W]hen there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement."). "Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages." *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992). Nevertheless, "'[u]nder no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits.'" *Ramada Worldwide, Inc. v. Hotel of Grayling, Inc.*, No. 08-3845, 2010 WL 2674460 at *9 (D.N.J. June 30, 2010) (quoting *S&R Corp.*, 968 F.2d at 376).[7]

While the Court recognizes "[w]hether conduct constitutes a breach of contract and, if it does, whether the breach is material is ordinarily jury questions," *Travelodge Hotels, Inc. v. Honeysuckle Enters.*, 357 F. Supp. 2d 788, 797 (D.N.J. 2005), the Court finds that Armstrong has

not offered any admissible evidence in support of this contention, in violation of Federal Rules of Civil Procedure 56(c)(2) and 56(c)(4). In a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). The Court finds there are no genuine issues of material fact as to whether RWI's purported failure to promote and market the hotel facility constituted a material breach of the Franchise Agreement and whether such conduct relieves Defendants of their obligations under the Franchise Agreement and Armstrong of his obligation under the Guaranty. As such, the Court finds that Armstrong has not set forth any evidence that establishes a genuine issue of material fact to preclude granting RWI summary judgment. Accordingly, the Court grants summary judgment as to the Sixth Count of RWI's Complaint.

### B. RWI Is Entitled to Summary Judgment on Damages

RWI claims that Armstrong is liable under the Franchise Agreement and Guaranty for outstanding Recurring Fees, liquidated damages, prejudgment interest, attorneys' fees, and costs. (ECF No 89-4 at 9-15.)

Where the terms of a contract are clear and unambiguous, it is proper for the Court to determine the contract's meaning as a matter of law. *See Bethlehem Steel Corp. v. United States,* 270 F.3d 135, 139 (3d Cir. 2001). In the instant matter, the Court finds that the Guaranty, the termination provision in the Franchise Agreement (§11.2), and the provisions governing Recurring Fees (§7 and Schedule C), liquidated damages (§12.1), prejudgment interest (§7.3), and attorneys' fees and costs (§17.4) are clear and unambiguous.

1. *Recurring Fees*

RWI seeks $145,432.48 in Recurring Fees, inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to § 7.3 of the Franchise Agreement) as of December 16, 2021. (ECF No. 89-4 at 10.) RWI has provided an invoice referencing outstanding amounts owed as of December 17, 2021. (*See* ECF No 90-4 at 10; Mallet Aff. ¶¶ 27-28, Ex. E.) The Court finds the unambiguous language of the Franchise Agreement indicates RWI is entitled to Recurring Fees. However, the Court finds it is unclear from the invoice submitted by RWI whether all the outstanding amounts constitute Recurring Fees. Additionally, it is unclear from the invoice and Franchise Agreement what constitutes "Finance Charges." Accordingly, the Court directs Plaintiff to submit supplemental documentation outlining the requested Recurring Fees.

2. *Liquidated Damages*

Plaintiff seeks $300,000.00 in liquidated damages as a result of the premature termination of the Franchise Agreement. (ECF No. 89-4 at 10-13.)

Pursuant to Section 12.1 of the Franchise Agreement, Keys of Topeka agreed that in the event of a termination of the Agreement pursuant to section 11.2, to pay liquidated damages to RWI in accordance with a formula specified in the Franchise Agreement. (Franchise Agreement §12.1.) Here, the applicable formula for calculating liquidated damages for the Facility is the product of $2,000.00 multiplied by the number of guest rooms Keys of Topeka was authorized to operate at the Facility at the time of termination. (*See id*.) At the time of termination, Keys of Topeka was operating 150 guest rooms at the Facility. The rationale behind the Franchise Agreement's liquidated damages clause is to forecast the nature of lost Recurring Fees that [RWI] would otherwise have received but for the premature termination. *See Ramada Worldwide Inc. v. Khan Hotels LLC*, No. CV 16-2477, 2017 WL 187384, at *6 (D.N.J. Jan. 17, 2017), *amended*, No.

CV 16-2477, 2017 WL 2831168 (D.N.J. June 30, 2017). The Court is satisfied that $300,000.00 in liquidated damages demonstrates a good faith attempt by the parties to reasonably forecast the loss resulting from the early termination of the Franchise Agreement. *See Elkins Motel Assocs.*, 2005 WL 2656676, at *10; (*see also* Franchise Agreement § 12.1.)

### 3. *Prejudgment Interests*

State law governs the availability of prejudgment interest on state law claims. *Mid-Jersey Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640, 645 (3d Cir. 1975). Under New Jersey law, prejudgment interest "has been regarded ... as compensatory- to indemnify the plaintiff for the loss of what the monies due him would [p]resumably have earned if payment had not been refused." *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 N.J. 474, 506, 323 A.2d 495 (1974).

Section 7.3 of the Franchise Agreement provides for prejudgment interest to be assessed at the rate of 1.5% per month. (Franchise Agreement § 7.3.) This provision is clear and unambiguous. Further, the Court agrees with RWI that the prejudgment interest rate of 1.5 percent applies to the Recurring Fees and liquidated damages. (*See* Franchise Agreement § 7.3 (establishing a 1.5% interest rate on any past due amount)); *see also Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, No. 02-2889, 2005 WL 3164205, at *10 (D.N.J. Nov. 10, 2005), *aff'd*, 244 F. App'x 522 (3d Cir. 2007) (finding plaintiff was "entitled to prejudgment interest at a rate of 1.5% per month" where the license agreement provided for monthly interest at that rate). The Court disagrees, however, with RWI as to the date that liquidated damages began to accrue. RWI contends the accrual date is December 13, 2017, "thirty (30) days from the date of termination." (ECF No. 89-4 at 13.) However, Section 11.2 of the Franchise Agreement provides RWI "may terminate this Agreement when we send written notice to you or such later date as required by law or as stated in the default notice, when ... (2) [Keys of Topeka] discontinue[s] operating the Facility as a

'Ramada[.]'" Under this provision, it was RWI that terminated the Franchise Agreement at its option by sending Defendants a letter dated December 29, 2017, effectively declaring Defendants in breach of the Franchise Agreement. As such, the liquidated damages accrued thirty days after that letter, on January 29, 2018. Accordingly, Plaintiff is entitled to $374,017.60 in interest[8] – January 29, 2018 (the first day liquidated damages were due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the December 29, 2017 termination date) through the date of this Opinion, December 30, 2024, a period of 2528 days. *See Days Inn Worldwide, Inc. v. Savita Hosp. Grp.*, No. 13-2863, 2014 WL 3748204, at *3-4 (D.N.J. July 28, 2024) (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff terminated the franchise agreement by sending a letter declaring the plaintiff was in breach through the day judgment was entered); *Honeysuckle Enters.*, 2005 WL 3164205, at *10 (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff sent acknowledgment of termination through the date of judgment). Liquidated damages plus interest, therefore, totals $674,017.60.

Accordingly, the Court grants RWI its requested prejudgment interest, as set forth above.

### 4. *Attorney's Fees and Costs*

Under New Jersey law, in a breach of contract action, legal expenses can be recovered if the contract between the parties so provides. *Papalexiou v. Tower West Condominium*, 167 N.J. Super. 516, 530 (Ch. Div. 1979). Here, attorneys' fees and costs are addressed in a clear and unambiguous provision of the Franchise Agreement, which the Guaranty incorporates by

---

[8] The interest rate of 1.5 percent per month is equivalent to a rate of 18 percent per year. (*See* Mallet Aff., ¶ 35.) Eighteen percent per year of the $300,000.00 liquidated damages amount is $54,000. (*See id.*). That amount divided by 365 days in a year equals the amount of interest due *per diem*: approximately $147.95. (*See id.*). From January 29, 2018 (the first day liquidated damages were due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the December 29, 2017 termination date), to the date of this Opinion, 2528 days elapsed. Thus, the product of $147.95 multiplied by 2528 days equals the prejudgment interest due for the period: $374,017.60.

reference. In particular, Section 17.4 of the Franchise Agreement states that the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Franchise Agreement § 17.4.) As the prevailing party in this case, RWI is thus entitled to reasonable attorneys' fees and costs that it incurred in connection with this action. *See Jackson Hewitt, Inc. v. Barnes Enters.*, No. 10-05108, 2012 1600572, at *3 (D.N.J. May 7, 2012) (awarding attorneys' fees and costs per franchise agreement); *Red Roof Franchising, LLC v. AA Hosp. Northshore, LLC*, 877 F. Supp. 2d 140, 154 (D.N.J. 2012) (holding that plaintiff was entitled to attorneys' fees and costs because "[d]efendants d[id] not dispute the provision in the franchise agreement or guarantee"). RWI claims it has incurred attorneys' fees totaling $12,600 and $1,264.85 in costs and expenses in connection with this matter. (Mallet Aff ¶ 36, Franchise Agreement § 17.4; Couch Cert. ¶¶ 20-22, Ex. Q.) However, RWI "does not provide any bills or invoices to support" their representation of "attorneys' fees and costs." *BMO Harris Bank, N.A. v. Naileen Transp. Corp.*, No. 21-14002, 2021 WL 5506911, at *4 (D.N.J. Nov. 19, 2021). Without such details, the Court cannot determine whether RWI's request for attorneys' fees and costs are reasonable and appropriate. *See id.*; *see also* L. Civ. R. 54.2(a) (providing that an attorney seeking fees must provide a description of the services rendered, including the date of service, the billing rate, and who performed the work). Plaintiff is provided leave to submit documentation to support its attorneys' fees and costs pursuant to Local Civil Rule 54.2.

IV.     **CONCLUSION**

For the foregoing reasons, the RWI's motion for summary judgment against Armstrong only on the Sixth Count of its Complaint in the matter *Ramada Worldwide Inc. v. Keys of Topeka Hospitality, LLC, et al.*, Civil Action No. 19-14575 (ECF No. 89) is **GRANTED**. RWI is entitled

to $300,000.00 in liquidated damages and $374,017.60 in prejudgment interest on the liquidated damages award. The Court **RESERVES** its decision on Recurring Fees and attorneys' fees and Costs pending receipt and review of supplemental submissions as directed by the Court. An appropriate Order accompanies this Opinion.

**DATED:** December 30, 2024

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge